1

2       IN THE UNITED STATES DISTRICT COURT

3       FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5    ELIAS D. AVILA,                    )    No. C 08-3424 SBA (PR)
                                        )
6                    Petitioner,        )    **ORDER DENYING PETITION FOR**
                                        )    **WRIT OF HABEAS CORPUS;**
7       v.                              )    **DENYING MOTION FOR**
                                        )    **EVIDENTIARY HEARING**
8    MIKE MCDONALD, Warden,             )
                                        )
9                    Respondent.        )
     _____        )    (Docket No. 18)

10

11                      **INTRODUCTION**

12          This matter is now before the Court for consideration of Petitioner's <u>pro se</u> petition for a writ

13  of habeas corpus under 28 U.S.C. § 2254 challenging his 2006 conviction in San Benito County

14  Superior Court.  Respondent Mike McDonald, Warden of California State Prison, Susanville,

15  opposes the petition.  Petitioner has filed a traverse.  For the reasons discussed below, the petition is

16  DENIED as to all claims.

17                      **BACKGROUND**

18  **I.    Case History**

19          On May 12, 2006, a jury in San Benito County Superior Court convicted Petitioner of two

20  counts of making criminal threats (Cal. Pen. Code § 422) (counts 2 and 4), and one count of assault

21  by means of force likely to produce great bodily injury (Cal. Pen. Code § 245(a)) (count 3).  The

22  jury also found true allegations that Petitioner used a deadly weapon in connection with count 2, and

23  that Petitioner had six prior strike convictions and had served two prior prison terms (Cal. Pen. Code

24  § 1192.7(c)(24), 667(b)-(i), 667.5(b)).  The jury acquitted Petitioner of one count of robbery (Cal.

25  Pen. Code § 211) (count 1).  Petitioner previously pled no contest to seven misdemeanor counts for

26  exhibiting a deadly weapon (Cal. Pen. Code § 417(a)(1)) (count 5); corporal injury to a cohabitant

27  (Cal. Pen. Code § 273.5(a)) (count 6); vandalism (Cal. Pen. Code § 594(a)) (count 7); battery (Cal.

28  Pen. Code § 243(e)(1)) (counts 8 and 11); disobeying a court order (Cal. Pen. Code § 166(a)(4))

(count 9); and disturbing the peace (Cal. Pen. Code § 415) (count 10). (Resp't Ex. A at 180-89; Ex. B at 324-45, 337-38.) On July 7, 2007, the trial court sentenced Petitioner to a term of 53 years to life in state prison. (Resp't Ex. A at 233; Ex. B at 507-08.)

In an unpublished opinion dated September 10, 2007, the California Court of Appeal affirmed the judgment. (Resp't. Ex. F.) On November 28, 2007, the California Supreme Court denied a petition for review. (Resp't Ex. G.)

The instant petition was filed on July 16, 2008, containing one claim. On October 28, 2008, Respondent was ordered to show cause. On November 14, 2008, Petitioner's motion to stay the case was granted while he exhausted five additional claims. Petitioner proceeded to file habeas petitions in the state courts raising these claims. On December 4, 2008, the San Benito County Superior Court denied a petition for a writ of habeas corpus. On January 29, 2009, the California Court of Appeal denied a second petition for a writ of habeas corpus. On March 11, 2009, the California Supreme Court denied a petition for review.

On March 20, 2009, Petitioner filed an amended petition for a writ of habeas corpus in the instant matter. The first five claims in the amended petition were the newly-exhausted claims, and the sixth claim duplicated the claim from the original petition. On June 30, 2009, this Court lifted the stay and ordered Respondent to show cause why the amended petition should not be granted. Respondent had previously filed an answer to the original petition along with a memorandum of points and authorities on January 22, 2009, and had concurrently lodged a number of exhibits. On August 26, 2009, Respondent filed a supplemental memorandum of points and authorities opposing the claims in the amended petition and lodged additional exhibits. Petitioner filed a traverse on September 14, 2009, in which he also requested an evidentiary hearing.

**II.    Statement of Facts**

The following facts are taken from the opinion of the California Court of Appeal:

Regina Partida had a relationship with appellant for about six years and had

lived with him "off and on" since 2002.[1]  Before that, appellant had had a relationship with Regina's sister Veronica Partida. In August 2005, Regina obtained a restraining order against appellant. In October 2005, appellant walked in front of a van in which Regina and Veronica were riding and said that he wanted to talk to Regina. Veronica put the van in reverse and drove away. Regina and Veronica went to a friend's house to call the police. Veronica asked the police to check her property to be sure that appellant was not there and they did so. Later that morning, Veronica received a phone call from appellant. He said, "Ha-ha. You thought you guys were going to catch me.... Now your whole fucking family is going to be dead."

On December 20, 2005, Regina, driving Veronica's Kia, drove to the parking lot of Alladin Bail Bonds looking for appellant. Appellant approached the car and opened the driver's side door. Regina and appellant talked for a while and then Regina told appellant that she wanted to leave. Appellant said that he wanted to come along and became angry when Regina said that she did not want to leave with him. He got into the driver's seat and Regina moved over. They struggled over the ignition key until it broke and Regina's arms were bruised as a result. Regina told a police officer that during the struggle over the key appellant took out a black knife with a four inch blade and threatened her, saying that he was going to kill her. Regina got out of the car and walked off. Appellant told her to get in the car. Regina testified that she did not get in the car. She said, "I was just pissed off, flipping him off, and yelling at him." As appellant drove off, Regina told him to come back, yelling, "Where are you going.... My car, my car." The next day, a police officer spotted appellant in the Kia. Appellant pulled over but then ran off on foot until he was apprehended. Appellant was in possession of a black pocket knife four inches long with a two-inch blade.

The prosecutor argued that Regina's demeanor on the stand showed that she was credible and that any inconsistency between her trial testimony and her statements to the police was because she still loved appellant and "she doesn't want to get him in any trouble." Defense counsel argued that the criminal threat to Veronica did not put Veronica in a state of fear, but that, instead, "she was in a state of anger." Counsel argued that the knife appellant possessed at the time of his arrest could not have been the knife Regina described from the day before and that, because appellant had taken the car and returned it in the past, there was no evidence that he intended to permanently deprive Regina of the car.

The jury found appellant not guilty of robbery. The jury convicted appellant of the assault with a deadly weapon charge and the two criminal threats charges, finding true the allegation as to one of them that appellant used a deadly weapon in the commission of it. After a short recess, evidence was presented concerning the prior conviction allegations and the jury found true those allegations. The trial court denied appellant's motion to strike some or all of the prior conviction allegations and sentenced appellant to an aggregate term of 53 years to life.

People v. Avila, No. H030600, slip op. at 2-3 (Cal. Ct. App. Sept. 12, 2007) (footnote in original)

(Resp't Ex. F).

---

[1]Although there was a considerable amount of testimony at trial concerning the charged misdemeanors, because appellant pleaded no contest to those offenses after the evidentiary portion of the trial was concluded, this summary is of the evidence concerning the felony charges.

**DISCUSSION**

**I.      Standard of Review for State Court Decisions**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits.  Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004).  It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court.  See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

**A.      Section 2254(d)(1)**

Challenges to purely legal questions resolved by a state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of  clearly established Federal law, as determined by the Supreme Court of the United States."  Williams (Terry) v. Taylor, 529 U.S. 362, 402-04, 409 (2000).  While the "contrary to" and "unreasonable application" clauses have independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards, see Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

**1.      Clearly Established Federal Law**

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of

4

the relevant state-court decision." <u>Williams</u>, 529 U.S. at 412.  "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." <u>Id.</u>  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." <u>Mitchell v. Esparza</u>, 540 U.S. 12, 17 (2003).  If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law.  <u>See, e.g.</u>, <u>Stevenson v. Lewis</u>, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. <u>Williams</u>, 529 U.S. at 391.  There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established." <u>Andrade</u>, 538 U.S. at 64-65.  When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework.  <u>See id.</u> at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." <u>Clark v. Murphy</u>, 331 F.3d 1062, 1070-71 (9th Cir.), <u>cert. denied</u>, 540 U.S. 968 (2003); <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600 (9th Cir. 1999).

### 2.    "Contrary to"

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413.  A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." <u>Williams</u>, 529 U.S. at 406.  Such a case should be analyzed under the "unreasonable application" prong of § 2254(d).  <u>See</u> <u>Weighall v. Middle</u>, 215 F.3d 1058, 1062 (9th Cir. 2000).

### 3.   "Unreasonable Application"

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 412-13. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway.  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).  Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it.  Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

The objectively unreasonable standard is not a clear error standard.  Andrade, 538 U.S. at 75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging the overruling of Van Tran on this point).  After Andrade,

> [t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise.  While the "objectively unreasonable" standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them.

Id.  In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result.  Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).

### B.   Sections 2254(d)(2), 2254(e)(1)

A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the

6

evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  An unreasonable determination of the facts occurs where a state court fails to consider and weigh highly probative, relevant evidence, central to a petitioner's claim, that was properly presented and made part of the state court record.   Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004).  A district court must presume correct any determination of a factual issue made by a state court unless a petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Section 2254(d)(2) applies to an intrinsic review of a state court's fact-finding process, or situations in which the petitioner challenges a state court's fact-findings based entirely on the state court record, whereas § 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court.  See Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004).  In Taylor, the Ninth Circuit established a two-part analysis under §§ 2254(d)(2) and 2254(e)(1).  Id.  First, federal courts must undertake an "intrinsic review" of a state court's fact-finding process under the "unreasonable determination" clause of § 2254(d)(2).  Id. at 1000.  The intrinsic review requires federal courts to examine the state court's fact-finding process, not its findings.  Id.  Once a state court's fact-finding process survives this intrinsic review, the second part of the analysis begins by dressing the state court finding in a presumption of correctness under § 2254(e)(1).  Id.  According to the AEDPA, this presumption means that the state court's fact-finding may be overturned based on new evidence presented by a petitioner for the first time in federal court only if such new evidence amounts to clear and convincing proof a state court finding is in error.  See 28 U.S.C. § 2254(e)(1).  "Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard of section 2254(d)(2)."  Taylor, 366 F.2d at 1000.

When there is no reasoned opinion from the highest state court to consider the Petitioner's claims, the Court looks to the last reasoned opinion.  See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).  Here, the California Court of Appeal was the highest state court to issue an explained opinion on Petitioner's claims.

7

## II.    Exhaustion

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through state collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b),(c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987).  It is undisputed that Petitioner exhausted his state court remedies as to all of his claims.  The first five claims were raised in his petition for review of the California Court of Appeal's denial of his petition for a writ of habeas corpus.  The sixth claim was exhausted on direct appeal.

## III.    Legal Claims

Petitioner raises six claims in his petition: (1) that there was insufficient evidence to support his conviction for assault; (2) that there was insufficient evidence to support his conviction for making criminal threats in count two; (3) that there was insufficient evidence to support his conviction for making criminal threats; (4) that he received ineffective assistance of trial counsel; (5) that he received ineffective assistance of appellate counsel; and (6) that the prosecutor committed misconduct in closing argument.

### A.    Sufficiency of Evidence to Support Assault Conviction

In his petition, Petitioner claims that there was insufficient evidence to support his conviction for assault with a deadly weapon because there was no evidence that he used a deadly weapon when he assaulted the victim.  (Pet. at 6a.)  Petitioner was not convicted of assault "with a deadly weapon," however.  Petitioner, as he concedes in his traverse, was convicted of the assault by means of force likely to cause great bodily injury pursuant to California Penal Code Section 245(a)(1).[2] (Resp't Ex. A at 110, 157, 185.)  Petitioner argues in his traverse that there was, nevertheless, insufficient evidence to support his conviction for assault by means of force likely to produce great bodily injury.

The Due Process Clause "protects the accused against conviction except upon proof beyond a

---

[2]California Penal Code Section 245(a)(1) encompasses assault with a deadly weapon "or" assault by means of force likely to produce great bodily injury.

reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, which, if proven, entitles him to federal habeas relief. Jackson v. Virginia, 443 U.S. 307, 321, 324 (1979).

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" See id. (quoting Jackson, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. Jackson, 443 U.S. at 324. On habeas review, a federal court evaluating the evidence under Winship and Jackson should take into consideration all of the evidence presented at trial. LaMere v. Slaughter, 458 F.3d 878, 882 (9th Cir. 2006).

Petitioner argues that the evidence was insufficient to support his conviction for assault by means of force likely to cause great bodily injury because the victim did not suffer any major injury. The state appellate courts' rejection of Petitioner's claim, however, indicates that his interpretation of state law is wrong, and that the amount of force he used satisfies the requirements of Section 245(a)(1). See People v. Beasley, 105 Cal.App.4th 1078, 1087 (2003) (beating with hands and feet may be sufficient to establish assault by force likely to produce great bodily injury); People v. Richardson, 23 Cal. App. 3d 403, 410-11 (1972) (actual bodily injury is not a necessary element of the crime of assault with force likely to produce great bodily injury). This determination of state law is binding on this Court on habeas review. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (holding that state court's interpretation of state law, including one announced on direct appeal of challenged conviction, binds federal court sitting in habeas corpus). Consequently, Petitioner's claim that his assault conviction violates his right to due process was violated due to insufficient evidence fails.

Petitioner also argues that his right to equal protection was violated because of the alleged

insufficiency of evidence.  To begin with, as discussed above, the evidence was not insufficient to support his assault conviction.  Petitioner contends that the force used by the defendant in <u>Beasley</u>, which was found insufficient to support a conviction for assault by means of force likely to cause great bodily injury, was more than the force Petitioner used in this case.  The Equal Protection Clause of the Fourteenth Amendment does not assure uniformity of judicial decisions or immunity from judicial error, however; otherwise, every alleged misapplication of state law would constitute a federal constitutional question.  <u>See</u> <u>Alford v. Rolfs</u>, 867 F.2d 1216, 1219 (9th Cir. 1989) (citing <u>Beck v. Washington</u>, 369 U.S. 541, 554-55 (1962)); <u>see, e.g.</u>, <u>Little v. Crawford</u>, 449 F.3d 1075, 1083 (9th Cir. 2006) (petitioner cannot establish equal protection claim warranting habeas relief simply because, or if, the Nevada Supreme Court misapplied Nevada law or departed from its past precedents).  Thus, even if Petitioner's conduct was less egregious than that of the defendant in <u>Beasley</u>, this does establish a violation of Petitioner's right to equal protection.

As Petitioner's right to due process and to equal protection were not violated by any insufficiency of the evidence supporting his assault conviction, the state courts' decisions denying Petitioner's claim were not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

**B.**      **<u>Sufficiency of Evidence of Making Criminal Threat (Count Two)</u>**

Petitioner claims that his conviction on count two for making criminal threats under California Penal Code § 422 violated his right to due process because it was not supported by sufficient evidence.[3]  This conviction was based on the Regina Partida's statements to the police that Petitioner had threatened to kill her.  Specifically, she told the police that after the struggle for the key, Petitioner swung the knife in front of her and told her that "he was going to kill her."  (Resp't Ex. B at 106-08.)  When she told Petitioner that she would call the police, Petitioner responded by saying again that he was going to kill her.  (<u>Id.</u> at 108.)

---

[3]Petitioner also argues in conclusory fashion in both his second and third claims, below, that his equal protection rights were violated.  He cites no authority in support of this argument, nor does he explain how he was similarly situated to others who received different treatment from him. See <u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985) ("The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike.").

California Penal Code Section 422 provides, in relevant part:

> Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which , on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison.

Cal. Pen. Code § 422.

Petitioner does not dispute that there was sufficient evidence for a rational jury to find that he told the victim that he would kill her while swinging his knife in front of her.  Rather, he argues that the threat he made does not qualify as a criminal threat within the meaning of Section 422 because it was only "conditional" and because it consisted of "words alone."  (Pet. at 6c.)  Petitioner's claim is premised on his interpretation of state law, specifically as to what constitutes a threat under Section 422.  The rejection of this claim by the state appellate courts is a determination of state law that binding on this Court on habeas review.  See Bradshaw, 546 U.S. at 76.

In any event, there was sufficient evidence for the jury to find that the threat was not conditional.  Specifically, the victim told the police that Petitioner said he was going to kill her before she said she would call the police, so the threat was not conditioned on her doing so.  The jury could reasonably find from Petitioner's statements that he "was going to kill her" while waving a knife in front of her that there was "an immediate prospect of execution of the threat" within the meaning of Section 422.   In addition, the threat did not consist solely of Petitioner's words, as he also waved his knife in front of the victim when he said that he was going to kill her.  But even if it did, Section 422 encompasses threats that are solely verbal.  People v. Mirmirani, 30 Cal.3d 375, 383 (1981).

Accordingly, Petitioner's right to due process was not violated because there was sufficient evidence to support the conviction on count two for making criminal threats.  Consequently, the state courts' decisions denying Petitioner's claim were not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

**C.     Sufficiency of Evidence of Making Criminal Threat (Count Four)**

11

Petitioner claims that his rights under the Fourteenth Amendment were violated because his conviction for making a criminal threat in count four was not supported by sufficient evidence.  The conviction on this count was based on the testimony by Veronica Partida that after she and Regina had called the police, Petitioner called Veronica on the telephone and said, "Ha-Ha.  You thought they were going to catch me . . . . Now your whole fucking family is going to be dead."  (Resp't. Ex. B at 66-70.)  A police officer also testified that Veronica told him later that day that Petitioner had called them and made this statement.  (Id. at 96-100.)

As an initial matter, Petitioner contends that did not make the statement on the telephone that Veronica described.  A jury's credibility determinations are entitled to near-total deference when a federal habeas court is deciding whether there was sufficient evidence to support the verdict.  Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).  Petitioner's denying that he threatened Veronica does not, without more, mean that there was insufficient evidence for the jury to believe her contrary testimony at trial and her statement to the police in which she described the threat he made to her on the telephone.  Petitioner also argues that even if he made the threat, it was only "conditional," and therefore did not qualify as a criminal threat under Section 422.  This argument is again based upon his interpretation of state law, an interpretation rejected by the state appellate courts in this case.

Moreover, there is nothing conditional about the statement, "Now your whole fucking family is going to be dead."  The jury could reasonably find such a statement to convey "an immediate prospect of execution of the threat" within the meaning of Section 422, particularly in light of the evidence that, following the phone call, Veronica was so frightened that she was shaking, and that she believed that Petitioner could carry out his threat against her and her family.  (See Resp't Ex. B at 70-71, 96-100.)  Finally, Petitioner reiterates the argument he made in his second claim, above, that words alone cannot constitute a threat under Section 422.  As discussed above, however, this argument is incorrect.  See Mirmirani, 30 Cal.3d at 383 (words alone can constitute a threat under Section 422).

As there was sufficient evidence to support Petitioner's conviction on count four for making criminal threats, his right to due process was not violated.  Consequently, the state courts' decisions denying Petitioner's claim were not contrary to, or an unreasonable application of, clearly

1    established Supreme Court precedent.

2            **D.      Ineffective Assistance of Counsel**

3            Petitioner claims that he received ineffective assistance of counsel because his trial attorney

4    did not tell him that prior to trial the prosecutor offered a maximum sentence of eight years in

5    exchange for his guilty plea.  Prior to a hearing on motions in limine, the prosecutor asked the trial

6    court when the pending plea offer would expire.  (Resp't Ex. A at 79.)  The trial court stated that it

7    would expire when the hearing commenced.  (Id.)  The trial court commenced the hearing without

8    objection from Petitioner or his attorney.  (Id.)  Respondent has submitted a declaration by

9    Petitioner's trial counsel, George Barton, stating that he informed Petitioner of the plea offer, but

10   Petitioner decided to reject the offer because he believed that he would be acquitted of the charges.

11   (Resp't Ex. J.)  Petitioner states that Mr. Barton never informed him of the offer, and that if he had

12   known about the offer he would have accepted it.  (Pet. at 6i.)  Petitioner states that he did not learn

13   about the offer until his counsel at sentencing, Roseanne McLean, informed him of it.  (Id.)

14           A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth

15   Amendment right to counsel, which guarantees not only assistance, but effective assistance of

16   counsel.[4]  Strickland v. Washington, 466 U.S. 668, 686 (1984).  In order to prevail on a Sixth

17   Amendment ineffectiveness of counsel claim, Petitioner must establish that counsel's performance

18   was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing

19   professional norms.  Id. at 687-88.  Petitioner must also establish that he was prejudiced by counsel's

20   deficient performance, i.e., that "there is a reasonable probability that, but for counsel's

21   unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  An

22   attorney renders ineffective assistance if he fails to convey a plea offer to a criminal defendant, and

23   there is prejudice from such failure if there is a reasonable probability that the defendant would have

24   accepted the plea offer had he known about it.  Hill v. Lockhart, 474 U.S. 52, 57 (1985); Jones v.

25   Wood, 114 F.3d 1002, 1012 (9th Cir. 1997).

26           Petitioner's claim that he was not informed of the plea offer is contradicted by the record.

27

28

---

[4]Petitioner claims without explanation that his right to equal protection was violated in connection with this claim.  The source of a claim of ineffective assistance of counsel is the Sixth Amendment, not the Equal Protection Clause, however.

The Clerk's minutes demonstrate that Petitioner was present on May 8, 2006 when the prosecutor and the trial judge discussed the fact that the pending plea offer of eight years would expire when the in limine hearing commenced.  (Resp't Ex. A at 79 (box for defendant's presence is checked; "DDA Hooper asked Judge Foley when is the cut off for the offer of eight years.").)  The Reporter's Transcript for that hearing also shows that Petitioner was present.  (Resp't Ex. H at 3.)  Petitioner's presence at the hearing at which the eight-year plea offer was discussed indicates that he was aware of the offer, contrary to what he claims here.  This record is corroborated by trial counsel's statement in his sworn declaration that he informed Petitioner of the plea offer, but Petitioner chose to decline it.  (Resp't Ex. J.)  In light of the trial record, the state courts reasonably rejected Petitioner's claim that trial counsel failed to inform him of the plea offer, and the denial of his claim of ineffective assistance of trial counsel was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.[5]

### E.       Ineffective Assistance of Appellate Counsel

Petitioner claims that his appellate counsel rendered ineffective assistance in failing to raise the foregoing four claims on direct appeal.  The Due Process Clause guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right.  Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appeal are reviewed according to the standard set out in Strickland.  Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  A petitioner therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal.  Id. at 1434 n.9 (citing Strickland, 466 U.S. at 688, 694).  It is important to note that appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant.  Jones v. Barnes, 463 U.S. 745, 751-754 (1983).  The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.  Miller, 882 F.2d at 1434.  Appellate counsel therefore will frequently remain above an objective standard of competence and

_____

[5]As Petitioner does not identify any evidence beyond his own sworn statement contained in the petition that he would present at an evidentiary hearing to support his contention. (Pet. at 7.)  As the Court has already found this statement belied by the record, his request for an evidentiary hearing on this issue will be denied.

have caused client no prejudice for the same reason – because he declined to raise a weak issue.  <u>Id.</u>

As discussed above, the four foregoing claims do not have merit.  Consequently, it was neither unreasonable nor prejudicial for appellate counsel not to have raised them on appeal, and the state courts' denial of Petitioner's claim of ineffective assistance of appellate counsel was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

### F. <u>Prosecutorial Misconduct</u>

Petitioner claims that his right to due process was violated because the prosecutor committed misconduct by making an improper argument about the reasonable doubt standard.  The argument to which Petitioner objects to was as follows:

> Now, my burden of proof, what I have to do is I have to prove that these crimes happened beyond a reasonable doubt. The reasonable doubt instruction at first sounds like it's a real heavy burden, and it should be because of the consequences, but when you look at the instruction, it says not every doubt, because there always could be doubt in life, it's what's reasonable.
> And the example I'd like to give on that is, you know the signal up here on San Benito and Fourth? It's a light, correct? Okay. Imagine you are driving up to the light; the light's green. Right? The light's green and you drive through it. Well, couldn't you have some imaginary doubt that maybe the light's malfunctioning and all sides are green? Okay? But is that reasonable? When your light is green, your traffic is flowing, the other traffic on-the cross traffic is stopped, doesn't it make that doubt unreasonable? It's reasonable to believe that the cross traffic has a red light, because you have got the green and everybody is stopped, and that you have got the green light and that's why you are proceeding?

(Resp't Ex. B at 288-89.)

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair."  <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986).  Under <u>Darden</u>, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness.  <u>Tan v. Runnels</u>, 413 F.3d 1101, 1112 (9th Cir. 2005).  A prosecutorial misconduct claim is decided "'on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  <u>Johnson v. Sublett</u>, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted).  If the trial was rendered fundamentally unfair, and due process was violated, the court must determine whether the error was harmless under the standard set forth in <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637-38 (1993).  The error is harmless if it did not have a substantial and injurious effect or influence in determining the jury's verdict.  <u>Id.</u> at 637.

1    Petitioner asserts that the prosecutor trivialized the reasonable doubt standard by analogizing

2    it to a traffic light.  In addition, he contends that the prosecutor implied that the jury had some

3    personalized knowledge of the specific traffic light referenced by the prosecutor.  The California

4    Court of Appeal rejected this argument based on the following reasoning:

5              Here, the prosecutor's argument did not misstate or trivialize the standard of
       proof by suggesting that the reasonable doubt standard is the same as one uses in
6      making ordinary decisions. The prosecutor's argument did not equate the level of
       certainty one has before proceeding through an intersection with the level of certainty
7      equivalent to proof beyond a reasonable doubt. Rather, the prosecutor was giving an
       example of a doubt that is not based on an assessment of the evidence presented. A
8      reasonable juror would have understood the prosecutor to be drawing a distinction,
       through the use of this example, between a reasonable doubt and a doubt that is
9      possible, imaginary or speculative. A juror would not have to be familiar with that
       particular intersection to understand that the prosecutor was talking about a standard
10     traffic signal. Taken in context, the prosecutor did not commit misconduct in
       argument.
11

12   (Resp't Ex. F at 7.)

13    For the reasons described by the state appellate court, the prosecutor's argument was not

14   misleading in the manner Petitioner suggests.  The prosecutor did not argue that the jury should

15   approach the reasonable doubt with as little deliberation and thought as the decision whether to go

16   through a green light.  The prosecutor simply cited the traffic signal as an example of what an

17   unreasonable doubt would be, but said nothing to trivialize the reasonable doubt inquiry.  In

18   addition, there was no need for the jury to be familiar with the particular intersection described by

19   the prosecutor because it was clear that the prosecutor was using it as an example of any ordinary

20   traffic signal.  Further, the prosecutor's use of the traffic signal to illustrate the concept of an

21   unreasonable doubt was somewhat convoluted and opaque, which would only have made the jury

22   more likely to ignore the prosecutor's argument as unhelpful.

23    In addition, when looking at the trial record as a whole, particularly in the context of the trial

24   court's jury instructions, it is clear that the prosecutor's argument did not render the trial

25   fundamentally unfair.  The trial court gave the instructed jury accurately on the reasonable doubt

26   standard, and to follow the trial court's instructions rather than the arguments of counsel.  (Resp't

27   Ex. A at 128-21.)  Even if the prosecutor's argument had been somehow misleading, a prosecutor's

28   mischaracterization of a jury instruction is not likely to render a trial fundamentally unfair if the trial

court issues the instruction properly:

1

> [A]rguments of counsel generally carry less weight with a jury than do instructions from the court.  The former are not evidence, and are likely viewed as the statements of advocates; the latter, we have often recognized, are viewed as definitive and binding statements of the law.  Arguments of counsel which misstate the law are subject to objection and to correction by the court.  This is not to say that prosecutorial misrepresentations may never have a decisive effect on the jury, but only that they are not to be judged as having the same force as an instruction from the court.

2

3

4

5

6   Boyde v. California, 494 U.S. 370, 384-85 (1989) (citations omitted).  For the reasons described in

7   Boyde, the prosecutor's argument carried substantially less weight than the trial court's indisputably

8   accurate instructions on the reasonable doubt standard.  Thus, the argument, even if it had been

9   misleading, did not render the trial fundamentally unfair.

10          In sum, the prosecutor's closing argument did not amount to misconduct and certainly did

11   not render the trial fundamentally unfair in violation of Petitioner's right to due process.

12   Accordingly, the state courts' denial of his claim of prosecutorial misconduct was neither contrary to

13   nor an unreasonable application of clearly established Supreme Court precedent.

14                                         **CONCLUSION**

15          For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  Petitioner's

16   motion for an evidentiary hearing (docket number 18 ) is also DENIED.  The Clerk of the Court

17   shall enter judgment and close the file.

18          No certificate of appealability is warranted in this case.  See Rule 11(a) of the Rules

19   Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on certificate of

20   appealability in same order that denies petition).  Petitioner has failed to make a substantial showing

21   that any of his claims amounted to a denial of his constitutional rights or demonstrate that a

22   reasonable jurist would find this Court's denial of his claims debatable or wrong.  See Slack v.

23   McDaniel, 529 U.S. 473, 484 (2000).

24          IT IS SO ORDERED.

25   DATED: 5/17/10

26                                         _Saundra B Armstrong_
                                           SAUNDRA BROWN ARMSTRONG
                                           United States District Judge

27

28

1  UNITED STATES DISTRICT COURT
   FOR THE
2  NORTHERN DISTRICT OF CALIFORNIA

3

4  ELIAS D. AVILA,
                                              Case Number: CV08-03424 SBA
5              Plaintiff,
                                              **CERTIFICATE OF SERVICE**
6     v.

7  FELKER et al,

8              Defendant.
   _____/

9

10  I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
    Court, Northern District of California.

11
    That on May 21, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said
12  copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
    envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
13  located in the Clerk's office.

14

15

16  Elias Daniel Avila F-34850
    High Desert State Prison
17  P.O. Box 3030
    Susanville, CA 96127
18
    Dated: May 21, 2010
19
                                              Richard W. Wieking, Clerk
20                                            By: LISA R CLARK, Deputy Clerk

21

22

23

24

25

26

27

28

   \PRO-SE\HC.08\Avila3424.denyHC.wpd        18